Proceed to the fifth case, Habib v. Holder. Proceed to the sixth case, Habib v. Holder. May it please the court, Helen Harnett for the appellate. Despite the complexities of immigration law, there are few procedural protections for immigrants in removal proceedings. Therefore, a critical burden rests on the Immigrants' Council to ensure that the proceedings meet the standard of fundamental fairness guaranteed by the Constitution. In the instant case, Ashraf Habib, who lawfully entered the U.S. in 1981 and has been a permanent resident for more than 15 years, was failed by his attorney. His attorney failed to submit critical evidence. He conceded to an allegation that Mr. Habib denies, and he failed to request an interpreter for Mr. Habib, who speaks English as a second language. In the removal proceeding, ICE alleged that Mr. Habib was removable due to fraud, that is, failing to list his ex-wife and children on his immigration applications and failing to divorce his first wife before he married his second wife. As in all removal proceedings, the burden rested on ICE to establish by clear, unequivocal, and convincing evidence that the respondent was removable. In this case, the attorney's concession that Mr. Habib was not lawfully married to his U.S. citizen wife provided ICE with the evidence it needed to meet its burden. Mr. Habib challenges the decision of the Board of Immigration Appeals, a decision written by a single board member, which found that his removal hearing did meet the standard of fundamental fairness. The board found that prior counsel did not provide an effective assistance when he erroneously admitted the allegation that Mr. Habib was not lawfully married to his U.S. citizen wife. The board alleged that the immigration judge would have found the marriage invalid anyway because DHS had submitted, quote, substantial evidence challenging the validity of the respondent's marriage, end quote. However, ICE's evidence was hardly substantial. It's in the record at 267 to 277. It consisted of a copy of a memo from the American Consulate in Karachi allegedly providing information about Mr. Habib's first wife and children and listing Mr. Habib as their father. An untranslated printout, apparently from a Pakistani online verification system. It's unclear what that says. And a copy of a letter from the director of the nursing home where Mr. Habib's U.S. citizen wife lived after she had Alzheimer's disease and the director saying that she did not recognize Mr. Habib as someone who visited her. ICE could not have met their burden to show by clearing convincing evidence with these flimsy documents. It was the prior attorney's erroneous concession to the allegation that Mr. Habib was not lawfully married to his U.S. citizen wife that allowed ICE to meet its burden. Attorneys frequently admit to allegations and charges on behalf of their clients. These admissions, even if they're erroneous, are binding on the clients unless egregious circumstances exist. Egregious circumstances exist when the attorney's admissions implicate the due process guarantee that removal proceedings accord with fundamental fairness. For example, when the result would be unfair or extraordinary, where the client offers evidence disproving the attorney's admission and where the admission was the result of ineffective assistance of counsel. For example, admitting allegations without a factual basis or conceding charges without consulting the client. In the instant case, the prior attorney met almost all the definitions of egregious and this is in the record on page 133. He admitted the allegations without conferencing with his client. He admitted an allegation that did not have a factual basis. And he admitted an allegation that his client could rebut with evidence of the validity of the marriage. In effect, when he admitted the allegation, both the judge and the trial attorney said, you admit number eight? Because they were so surprised. The board also erred when it found the prior counsel did not provide ineffective assistance when he failed to submit critical evidence. In its decision, the board relied on statements made in an unsigned letter to the Illinois Attorney Ethics Commission, an unsigned letter that Oyl refers to as an affidavit. The board ignored the fact that during the removal proceedings, the attorney twice told the judge that he'd already submitted the divorce decree into the record and twice told the judge that he had just received the decree from his client. The board stated that it disregarded Mr. Habib's affidavit because he did not provide a precise date on which he supplied his attorney with the divorce decree. However, the unsigned letter that was sent to the Illinois Attorney Ethics Commission also does not contain a precise date. Mr. Habib's affidavit plausibly states that he gave all the relevant documents to his immigration attorney prior to the master calendar hearing. Moreover, the attorney is the expert on what needs to be presented before the court. Competent counsel would have known for months that this was a critical document and would have ensured that it was entered into evidence or would have obtained a continuance until the divorce decree could be obtained. The board also erred when it found that prior counsel did not provide ineffective assistance when he failed to request an interpreter. In its decision, the board speculated that this might have been a tactical decision by the attorney. However, no competent attorney would make such a tactical decision. There is no possible advantage for doing so. The board also faulted Habib for not pointing to specific testimony that was inaccurate or incomplete, but obvious comprehension issues run throughout the transcript. ICE counsel and the immigration judge repeatedly told Mr. Habib that they couldn't understand him. During the middle of cross-examination, the immigration judge said to Mr. Habib, Do you speak English, sir? And when the immigration judge told Mr. Habib that his counsel had admitted the allegation that he was not lawfully married to his U.S. citizen wife, Mr. Habib was stunned. He had no idea that that had happened. Reading the transcript, it's clear that English is not Mr. Habib's best language. Questioning an immigrant in his second language in removal proceedings, which often can mean life or death, does not meet the fundamentally fair standard. Finally, the board erred when it found that prior counsel's ineffective assistance did not prejudice Habib. They clearly prejudiced Habib. The IJ relied heavily on the prior attorney's erroneous admission both in her questioning of Habib and in her decision. And Habib's inability to answer questions fully and clearly due to his language difficulties no doubt influenced the immigration judge's opinion of his testimony. I'd like to reserve the balance of my time. All right. Thank you, Ms. Simon. Mr. Robbins? May it please the Court, Jonathan Robbins here on behalf of the Attorney General. Good morning. I think it's probably best to start with what's not in dispute in this case. It's not in dispute that Petitioner failed to disclose to his first wife and three children in his adjustment application. It's not in dispute that he intentionally lied on his naturalization application. It's not in dispute that he lied twice at two separate interviews to immigration authorities. And I would note that Petitioner has waived any challenge to the agency's determination that he is removable on the basis of his willful misrepresentations to the agency. So their argument is limited to whether or not the Board abused its discretion in denying the motion to reopen based on ineffective assistance of counsel. And the Board's decision is in no way arbitrary or capricious. It's very well-reasoned and well-supported as to why it determined that reopening was not warranted on that basis. But this admission by his counsel on point eight and then not submitting the copy of the divorce decree, that was pretty significant in terms of incompetence. And the basis for the Board's denial of the motion to reopen on that basis was it found that Petitioner in the motion to reopen did not allege the proper facts that it needed to be able to determine whether or not that ineffective assistance of counsel prejudiced or actually constituted deficient performance. The regulations and the statute and regulatory requirements require that an alien allege the facts that they intend to prove at the hearing. And if you note in the motion to reopen, they conspicuously leave out exactly when Petitioner provided the divorce decree to former counsel. And that's a critical element that the Board needs to know in order to determine whether or not the performance in that regard was actually deficient. Again, that's a, you know, the question here is did the Board abuse its discretion in applying that reasoning? Well, given that that's required by statute and required by regulation, I don't think it can be said that the Board's decision was arbitrary. When we look at what the lawyer says when he's confronted about the divorce deed, he said he believed he had previously submitted a copy of this divorce decree to the government. Then at another time when the government's counsel asserted, disputed that, he said he just got it recently. So you've got the lawyer talking out of two sides of his mouth. If he got it earlier, then I understand it was undated. But that certainly suggests that he got it earlier and not recently. Well, it's not clear. And again, the question is... Right. It's not clear. And so, therefore, it not being clear, shouldn't we give the benefit to Mr. Habib? No. The question here is whether or not the motion to reopen, whether the Board abused its discretion in denying the motion to reopen. If Petitioner doesn't allege what he needs to allege in the motion to reopen, then the Board didn't abuse its discretion. What happened at lower proceedings, certainly that could be potentially an indication that maybe there is a basis for a failure to submit the divorce decree. But if Petitioner doesn't allege the specific things she needs to allege in her motion to reopen, that's the only thing that's before the court is the denial of the motion to reopen. So maybe you're right. Maybe the former attorney did have it confused. But that's not the issue here. The issue here is Petitioner needed to say, if she wanted her motion to reopen to warrant reopening on the basis of ineffective assistance of counsel, she has to allege, I gave him the divorce decree prior to the 15-day period that's outlined in the Immigration Court Practice Manual. He testified that he divorced his Pakistani wife in 1994. Yes. And then it was pointed out that his lawyer said in Allegation 8 that the marriage was invalid. And the lawyer then mumbled something about a mistake, but he didn't move to retract that admission. Well, that's a separate allegation that they make with respect to their former attorney. That's with respect to the allegation of Number 8 in the notice to appear. And when you read the transcript, I don't think there's any question that was a mistake by their former attorney, that he shouldn't have admitted that he wasn't validly married to Ms. Wallace. The problem with that is you have to demonstrate prejudice or that you were fundamentally prevented from presenting your case. And if you read the entire case of what happened below, that's exactly what they did. It's not as though they were prevented from arguing that he wasn't validly divorced from Ms. Wallace. I mean, that's what the whole proceeding was about. So that allegation really didn't prejudice him in any way. He still was able to present the case that, yes, I was validly divorced from my first wife, and I was validly married to my citizen wife. So his old counsel who had admitted Number 8, you're saying that he would have been also in this same proceeding admitted that he was wrong, that he takes that back, and he was going to present evidence to the contrary? They did present evidence to the contrary. Petitioner testified to it. I mean, he was questioned at length about it. That's in the proceeding. That's in the record in the proceedings. I mean, that's what the proceedings were about. So his new counsel just filed the appeal? Which appeal, to this court or to the board? To the board. I think to the board there was, at some point there was a withdrawal of a former counsel. I'm not sure when current counsel took over. But let me get back to the original proceedings before the IJ. Counsel claimed that the admission was a mistake. He never moved to amend the pleadings or withdraw the admission. So even with all this testimony that was presented by Habib about the divorce, about the divorce decree, nothing was ever amended in that proceeding. That's correct. So to get back to my point then, in terms of that counsel, if he never had ‑‑ it just seems inconsistent that he would then elicit testimony about the divorce and have him explain everything and then still not withdraw that. I think perhaps, I mean, this is speculation, but I think perhaps the reason he didn't think to move to amend it was because it was so apparent based on proceedings that they were arguing that he was validly divorced, that it was just so obvious. That he was validly divorced. That he was validly divorced from his first wife. Right. That was obvious. That it was obvious that's what they were arguing. And with respect to the third allegation. What about the question that counsel mentioned that the judge, immigration judge, asked the petitioner whether he understood what he had just said, what his lawyer had just said. I mean, he was surprised. It sounds to me like the judge was surprised at that admission. They were surprised. It was definitely, I think, a mistake by the former counsel to admit that allegation. I think he misunderstood what he was admitting to. I don't think there's any question when you read the record that that's what happened. But again, we're looking at this in terms of what did the board do here in denying the motion to reopen? And did this affect the outcome of the case? And given the fact that the whole proceeding was presenting evidence that he was divorced, I don't think that allegation really prejudges them in any way. Of course, the board relied and the IG relied heavily on his admission that the marriage was invalid. Right? The IJ mentioned it in the findings. I'm looking for it now. The IJ mentioned it. And then the BIA also mentioned it, what the lawyer conceded to. They mentioned it. I wouldn't say that they relied on it heavily. I mean, if you look at the exact language here, it says, furthermore, he admitted through counsel that at the time of his adjustment on April 13, 1999, he was not validly married to a U.S. citizen. And then it also talks about the government investigation and the marital status. And it just said, given the conflicting evidence as to whether the previous marriage ended in divorce, it's clear that the misrepresentation was material. So it was talking about whether or not it only mentioned it in regards to whether or not the misrepresentation was material. In other words, whether it met that prong of the Supreme Court's decision in Cungus as to materiality. So I don't think it relied that heavily on it in terms of saying, oh, I find that you're married. I find that it wasn't a valid divorce. He didn't find that. But certainly it was taking into account what the lawyer said and the admission and factual allegation number eight, because the – I just want to make sure I have it right. The IJ's decision makes reference to it and to that paragraph. Yeah. He definitely makes reference to the fact that the allegation was admitted. But, again, was Petitioner prevented from presenting his case that he was divorced? No. And, again, we're looking at this in terms of whether or not the board abused its discretion in denying the motion to reopen on this basis. So, I mean, I just don't – And was there any detail in terms of the government's investigation into his marital status other than the application for naturalization? Well, it says in the decision that he admitted through counsel at the time of his adjustment that as a spouse of a U.S. citizen, he was not validly married to a U.S. citizen. The government investigation into his marital status as part of his application also revealed at the time of adjustment he was still married to Mrs. Ashrath. What I'm asking about is what was the government investigation other than the application? Like, was there – that was it, right? I think so, yeah. Yeah, so there wasn't like a full-blown investigation by the government. Those documents were the result of the full investigation. Right, so it was a combination of the admission and the fact that he had on that form indicated that, well, he didn't mention it, right? He didn't mention the fact that he had been married. Correct. Right, okay. I see a red light. I just wanted to see what that was. Unless there are any other questions, we respectfully request the court  Thank you very much for your time. Thank you, Mr. Robbins. Ms. Harner? I'm going to speak to the prejudice issue that counsel raised, but first I want to say we absolutely did not weigh our challenge to the removal finding. We challenged BIA's decision on both the appeal and on the motion to reopen. And then this letter that the lawyer – that he submitted, the letter, it wasn't signed by the lawyer. It was actually written on his behalf by someone at the law firm, right? Right, that's correct. So he did not – in other words, the lawyer didn't verify that he did not receive the divorce decree on a timely basis. That's correct. And that's what OIL refers to as an affidavit in their brief. On the issue of prejudice, as I said, the immigration judge and the BIA relied repeatedly on the attorney's concession and the failure to enter the divorce decree into the record. This prejudiced Mr. Habib because in a fair hearing, his attorney would have timely submitted the divorce decree and denied all allegations of wrongdoing. Then the hearing would have focused on the immigration applications. Even if the immigration judge did find that ICE proved by clear and convincing evidence that Habib had made a material misrepresentation by not listing his ex-wife and children on the applications, the analysis would not end there as the board and OIL in its brief erroneously assert. Instead, per the Supreme Court's decision in Cungus and this court's decision in Calais, the burden would then shift to Mr. Habib to show by a preponderance of the evidence that he was statutorily eligible for admission. With competent counsel, he had a strong chance of demonstrating such eligibility. Even if Mr. Habib couldn't meet that burden, with competent counsel, he could have sought relief, including cancellation of removal and voluntary departure. If there's no questions, we request that this court grant the petition for review. Thank you, Ms. Hornett. Thank you, Mr. Robinson. Case is taken under press.